IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSTELLATION SERVICES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 23-762-GBW-LDH |
| WALTER C. ANDERSON, et al., | ) ) ) | FILED |
| Defendants. | ) ) | JUL 3 1 2025 |

U.S. DISTRICT COURT DISTRICT OF DELAWARE

**REPORT AND RECOMMENDATION**

Plaintiff Constellation Services International, Inc. ("Plaintiff" or "CSI"), brought this interpleader action under 28 U.S.C. § 1335 to resolve competing claims for CSI stock certificate # 33 (D.I. 1). Before the Court are three motions: (1) Defendant Walter Anderson's ("Anderson") Motion for Judgment in Relation to Funds Held by the Court (D.I. 19), (2) Plaintiff's Motion to Discharge Plaintiff in Interpleader and Petition for Attorneys' Fees and Costs (D.I. 34), and (3) Defendant Meade Malone's ("Malone"), as Official Liquidator of Gold & Appel Transfer S.A. ("Gold & Appel"), Cross-Motion for Summary Judgment (D.I. 36).

As set forth below, I recommend that Defendant Malone's Cross-Motion for Summary Judgment (D.I. 36) be GRANTED, and that Defendant Anderson's Motion for Judgment in Relation to Funds Held by the Court (D.I. 19) be DENIED. I further recommend that CSI's Motion to Discharge Plaintiff in Interpleader and Petition for Attorneys' fees (D.I. 34) be GRANTED.

## I. LEGAL STANDARD

### A. Discharge of Interpleader Plaintiff

Rule 22 of the Federal Rules of Civil Procedure provide, in relevant part, that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). The purpose of interpleader is to allow "a stakeholder who 'admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] . . . to file suit, deposit the property with the court, and withdraw from the proceedings.'" *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (alteration in original) (quoting *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)). The result is that the competing parties are left to litigate the claims between themselves, while the stakeholder is relieved of any further liability with respect to the dispute. *Id.* The typical interpleader action proceeds in two distinct stages. First, the court determines whether the action is proper and whether to discharge the stakeholder from liability. *Prudential*, 553 F.3d at 262 (citing *NYLife Distribs., Inc. v. The Adherence Group, Inc.*, 72 F.3d 371, 375 (3d Cir. 1995)). In the second stage, the court determines the respective rights of the claimants to the interpleaded funds. *Id.* (citing *NYLife*, at 375).

### B. Summary Judgment

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *1 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)). A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## II. BACKGROUND

CSI, a commercial space operations business, was initially incorporated in Delaware in 1998. (D.I. 1 at 5). Stock certificate # 33, consisting of 810,816 equity shares, was purchased from CSI by Gold & Appel for $250,000 in late 1999/early 2000 (the "CSI Shares"). (*Id.* at 7). The CSI Shares were subsequently transferred from Gold & Appel to Space Incorporated on September 11, 2002. (*Id.*). The transfer was authorized by Anderson, who, at the time of the transfer, was serving as president of both Gold & Appel and Space Incorporated. (*Id.*). In 2009, CSI spun off a company called Nanoracks LLC ("Nanoracks"), and ceased its business operations while retaining an indirect, and passive, ownership interest in Nanoracks. (*Id.* at 5). In 2012, Nanoracks became part of XO Market Holdings, Inc ("XO") and CSI's indirect ownership became 149,900 shares of XO. (*Id.*).

Following the transfer, Gold & Appel was placed in an involuntary insolvency proceeding in the British Virgin Islands ("BVI") and Malone was appointed as the official liquidator. (D.I. 37

at 3, Ex. 1 at 1). Malone's duties included winding up Gold & Appel's affairs, collecting assets, and the equitable distribution of recovered assets to legitimate creditors of Gold & Appel. (*Id.* at 2–4). He also retained the power to "commence, continue, discontinue, or defend any action or other legal proceedings in the name and on behalf of Gold & Appel in the [BVI] or elsewhere." (*Id.* at 3).

On May 16, 2005, Malone filed, in the U.S. Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"), a petition pursuant to Sections 105(a) and 304 of Title 11 of the United States Code to commence a case ancillary to the BVI foreign bankruptcy proceeding for the purpose of recovering property of Gold & Appel for its creditors. (D.I. 37 at 3–4). That same day, Malone filed an adversary proceeding which asserted eighty-seven counts for fraudulent conveyance, fraud and intentional misrepresentation, aiding and abetting fraud, and civil conspiracy against forty-two defendants, including Anderson. (*Id.* at 4). Anderson was also subject to a criminal prosecution by the United States for tax fraud. *In re Gold & Appel Transfer S.A.*, No. 05-775, 2013 WL 4824428, at *1 (Bankr. D.D.C. Sept. 6, 2013) ("Anderson has been convicted of tax fraud for filing income tax returns that failed to report more than $364 million in investment-type income"). Anderson eventually entered a guilty plea for criminal tax evasion and was sentenced to imprisonment. *See generally Anderson v. Comm'r*, 698 F.3d 160, 162–64 (3d Cir. 2012).

The Bankruptcy Court determined that various transfers of Gold & Appel property to Anderson-controlled entities were fraudulent transfers, and it ordered that the transferred assets, including transfer of the CSI Shares, were to be avoided. (D.I. 37 at 5–6); *see generally In re Gold & Appel Transfer S.A.*, No. 05-775, 2013 WL 4824428 (Bankr. D.D.C. Sept. 6, 2013); *see also Meade Malone, Official Liquidator for Gold & Appel Transfer S.A. v. Iceberg Transport S.A., et al. (In re Gold & Appel Transfer S.A.)*, Case No. 05-775, Adv. No. 05-10022, D.I. 423 at 2–4, 10

4

(the "Avoidance Order") (Bankr. D.D.C. Sept. 6, 2013). As a result of that decision, ownership and control of the assets were returned to Malone. (D.I. 37 at 5–6). Contemporaneously, the Bankruptcy Court denied Malone's motion seeking to avoid certain of Anderson's liens against Gold & Appel. *In re Gold & Appel Transfer S.A.*, 2013 WL 4824428, at *2 (the "Summary Judgment Decision"). In the Summary Judgment Decision, the Bankruptcy Court specified that the liens asserted by Anderson were unperfected, which would ordinarily allow a trustee in a bankruptcy proceeding to avoid such liens pursuant to section 544 of the Bankruptcy Code, but that Malone—as a liquidator in a foreign proceeding seeking relief afforded under section 304 of the Bankruptcy Code—did not enjoy the powers of a trustee under section 544. *Id.* Citing to the Summary Judgment Decision, Anderson claims that the loans that he made to Gold & Appel were valid and, therefore, that he is entitled to receive the funds at issue in this action as partial repayment of those loans. (D.I. 20 at 5–6).

Following the Summary Judgment Decision, Malone filed a proceeding with the Bankruptcy Court under chapter 7 and sections 544 and 550 of the Bankruptcy Code, which permitted him to bring certain actions, including actions to avoid secured but unperfected liens, like the ones Anderson asserted against Gold & Appel. (D.I. 37 at 8). On June 9, 2014, the Bankruptcy Court entered an order avoiding the liens asserted by Anderson and further provided that "[Malone] shall no longer be required to treat the assets of Gold & Appel, including without limitation the Transferred Assets, and any proceeds, products, offspring, and profits of such assets, as subject to [Anderson's liens]." (*Id.* at 8–9) (the "Second Avoidance Order"). CSI then commenced this interpleader action to resolve competing claims for the CSI Shares and further deposited $223,046.35, the present value of the CSI Shares, with the Clerk of Court on November 8, 2023. (D.I. 16).

5

## III. DISCUSSION

### A. Ownership of the CSI Shares.

Malone and Anderson agree that the Bankruptcy Court's decisions govern my analysis.[1] (D.I. 37 at 8–11; D.I. 20 at 4–5). Anderson argues that the Summary Judgment Decision, which did not avoid Anderson's secured liens against Gold & Appel, requires a finding in his favor. (D.I. 20 at 5–6). Malone argues that the Second Avoidance Order, which avoids Anderson's secured liens, requires a finding in his favor. I agree with Malone.

The Second Avoidance Order makes clear that the Bankruptcy Court has already addressed the issue that Anderson now brings before this Court, so the doctrine of collateral estoppel applies. (*See also* D.I. 20 at 4–5 (arguing that collateral estoppel applies)). "Collateral estoppel is relevant 'where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'" *Veterinary Surgical Consultants, P.C. v. C.I.R.*, 90 F. App'x 669, 670 (3d Cir. 2004) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 599 (1948)). The elements for collateral estoppel are satisfied

---

[1] Malone requests that the Court take "judicial notice of the proceedings before the Bankruptcy Court related to this matter . . . ." (D.I. 37 at 5 n.2). The Court will take judicial notice of the existence of memorandum opinions in the Bankruptcy Court's proceedings (for example, the Avoidance Order, the Summary Judgment Decision, and the Second Avoidance Order), and the proceedings themselves. *See M & M Stone Co. v. Pa.*, 388 F. App'x 156, 162 (3d Cir. 2010) ("In the context of deciding a Rule 12(b)(6) motion that raises issue preclusion concerns, and where a [party] has not included the existence or substance of the prior adjudications in the body of, or attachments to, its complaint, it is axiomatic that a court must still consider the prior adjudication in order to determine whether issue preclusion bars that [party]'s claims."); *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257–58 (E.D. Pa. 2020) (recognizing that the court may take judicial notice of filings in other proceedings "to establish their existence [for the purpose of applying issue preclusion], and not for the truth of the facts asserted in those filings") (internal citations and quotation marks omitted); *see also Trs. of Gen. Assembly of Lord Jesus Christ of the Apostolic Faith Inc., et al. v. Patterson, et al.*, No. 21-634-KSM, 2022 WL 16944000, at *2 (E.D. Pa. Nov. 14, 2022) (taking judicial notice of court filings in state and other federal actions along with court opinions and orders in those matters as to the fact of their filing and the rulings issued by the court[s], but not as to the truthfulness of "the contentions and allegations of the parties contained therein").

when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *National R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 342 F.3d 242, 252 (3d Cir. 2003) (alterations in original) (internal quotation marks omitted). Further, collateral estoppel:

> does not require the entry of a judgment, final in the sense of being appealable. *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (applying New Jersey law). Rather, it requires that "any prior adjudication of an issue in another action . . . be sufficiently firm to be accorded conclusive effect." *Id.* And in determining whether the resolution of an issue was sufficiently firm, courts consider "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Id.*

*Hart v. Wells Fargo Bank, N.A.*, No. 22-2229, 2023 WL 3244574, at *1 (3d Cir. May 4, 2023).

Anderson's argument relies entirely on the Summary Judgment Decision and fails to account for the Second Avoidance Order.[2] On February 12, 2014, Malone filed an involuntary chapter 7 petition in the Bankruptcy Court. *See generally In re Gold & Appel Transfer S.A.*, Case No. 14-89 (Bankr. D.D.C.); (D.I. 37, Ex. 6 at 1–15). This petition gave Malone standing pursuant to sections 544 and 550 of the Bankruptcy Code to avoid unperfected liens, which were improper pursuant to section 304 of the Bankruptcy Code. After the filing of Malone's motion, the Bankruptcy Court entered its Second Avoidance Order. Pursuant to the Second Avoidance Order, the Liens asserted by Anderson here that are the basis for his claim to the value of the CSI Shares

---

[2] Anderson's motion cites exclusively to the Summary Judgment Decision and does not address the Second Avoidance Order at all. To the extent Anderson was unaware of its potential import, Anderson had the opportunity to file a reply brief in support of his motion to address the arguments raised by Malone, including the applicability of the Second Avoidance Order. He did not do so.

(D.I. 20 at 6), were avoided and ruled subordinated to all other claims asserted against Gold & Appel.[3]

I find that because the liens asserted here are the same as asserted in the prior action before the Bankruptcy Court that the first requirement for collateral estoppel has been met. (*See also* D.I. 20 at 5–6). I similarly find that the second requirement is met. The Bankruptcy Court's decisions came after both Malone and Anderson completed briefing and had the opportunity to argue their positions before the court. Anderson did not appeal the Second Avoidance Order, so it remains a binding decision that was essential to the Bankruptcy Court's determination.

Even viewing the evidence before me in the light most favorable to Anderson's assertions and drawing all reasonable inferences in his favor, collateral estoppel requires that I find in favor of Malone. Accordingly, pursuant to the Bankruptcy Court's Second Avoidance Order, I recommend that the monies currently held by the Clerk of the Court be disbursed, less the costs and fees discussed below, to the exclusive control of Meade Malone, Official Liquidator of Gold & Appel Transfer S.A.

### B. Award of Attorneys' Fees to CSI

CSI moved for an order discharging it as interpleader plaintiff and for an order awarding CSI its costs and attorneys' fees. (D.I. 34). The Court has discretion to award an interpleader plaintiff attorneys' fees and costs if the plaintiff is "(1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a

---

[3] *See In re Gold & Appel Transfer S.A.*, Adv. No. 05-10022, D.I. 509 at 3 (Bankr. D.D.C. June 4, 2014) ("upon the avoidance of the Liens pursuant to this order, the directives set forth in the Court's [First Avoidance Order] shall no longer apply, and the Official Liquidator shall no longer be required to treat the assets of Gold & Appel, including without limitation the Transferred Assets, and any proceeds, products, offspring, and profits of such assets, as subject to the Liens . . . any and all claims arising under or in connection with the Consolidated Note shall be unsecured[.]")

discharge from liability." *Metro. Life Ins. Co. v. Kubicheck*, 83 F. App'x 425, 431 (3d Cir. 2003) (citation omitted).

The Court will allow CSI to offset its reasonable legal fees and costs because it is a disinterested stakeholder. It has conceded liability, deposited the disputed funds with the Court, and sought a discharge from liability. It therefore meets the factors necessary for an award of attorneys' fees and costs.

CSI included an affidavit from Terisa A, Shoremount, attorney at McCollom D'Emilio Smith Uebler LLC, which sets forth a breakdown of the costs and fees incurred in this action. (D.I. 34-2). No party disputes the reasonableness of the fees or costs, and there is nothing in the record to support a conclusion to the contrary. Moreover, once a disinterested interpleader plaintiff has filed the suit and deposited the money with the court, the court has the authority to issue an order discharging the plaintiff from liability. *See Lexington Ins. Co. v. Jacobs Indus. Maintenance Co., LLC*, 435 F. App'x 144, 146–48 (3d Cir. 2011) (recognizing the general rule that an interpleader plaintiff may be discharged if they are "free from blame in causing the controversy") (internal citations and quotation marks omitted)); 28 U.S.C. § 2361. Accordingly, I recommend that CSI's Motion to Discharge Plaintiff in Interpleader and Petition for Attorneys' Fees and Costs be GRANTED and that the fees be paid out from the funds deposited by CSI and currently held by the Clerk of the Court.

## IV. CONCLUSION

For the foregoing reasons I recommend that Defendant Malone's Cross-Motion Motion for Summary Judgment be GRANTED, Defendant Anderson's Motion for Judgment in Relation to Funds Held by the Court be DENIED, and CSI's Motion for Attorneys' fees be GRANTED.

9

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72", dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: July 31, 2025

_____
Laura D. Hatcher
United States Magistrate Judge